NO.
12-05-00193-CV

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

THE STATE OF TEXAS FOR        §                      APPEAL FROM THE 

 

THE BEST INTEREST AND          §                      COUNTY COURT OF

 

PROTECTION OF
R.J.M.   §                      CHEROKEE
COUNTY, TEXAS

                                                                                                                                                           


MEMORANDUM OPINION

            Appellant
R.J.M. appeals from an order of commitment for temporary inpatient mental
health services.  After a hearing without
a jury, the trial court ordered R.J.M. committed to Rusk State Hospital for a
period not to exceed ninety days.  In one
issue, R.J.M. asserts the evidence is legally and factually insufficient to
support that order.  We affirm.

 

Background

            On
June 6, 2005, an application for court ordered temporary mental health services
was filed requesting the court commit R.J.M. to Rusk State Hospital for a
period not to exceed ninety days.  The
application was supported by a certificate of medical examination for mental
illness, prepared by a physician, Dr. Vasantha Orocoesky, who had examined
R.J.M. on June 5.  Dr. Orocoesky
diagnosed R.J.M. as suffering from Bipolar Disorder.  He found that R.J.M. is mentally ill and
likely to cause serious harm to herself. 
He also found that she is suffering severe and abnormal mental,
emotional, or physical distress; is experiencing substantial mental or physical
deterioration of her ability to function independently; and is unable to make a
rational and informed decision as to whether or not to submit to
treatment.  

            Dr.
Orocoesky reached these conclusions because, on or about June 5, R.J.M.
admitted to running naked to make a point for the world because we are going to
be blown up soon.  She said, “If that is
not true, I am crazy.”  The doctor
explained that she was disheveled and fearful, and she refused to speak to
people at Sabine Valley Center.  Dr.
Orocoesky found that R.J.M. presents a substantial risk of serious harm to
herself or others if not immediately restrained, an opinion he based on R.J.M.’s
behavior and on evidence of severe emotional distress and deterioration in her
mental condition to the extent that she cannot remain at liberty.  Dr. Orocoesky formed this opinion because of
what R.J.M. had said and done as set out above.

            On
June 7, 2005, R.J.M. was examined by Dr. Laurence Taylor who then also prepared
a certificate of medical examination for mental illness.  Dr. Taylor diagnosed R.J.M. with Bipolar I
Disorder, mixed, with psychosis and indicated that R.J.M. is mentally ill and
likely to cause serious harm to herself. 
The doctor also found that R.J.M. is suffering severe and abnormal
mental, emotional, or physical distress; is experiencing substantial mental or
physical deterioration of her ability to function independently; and is unable
to make a rational and informed decision as to whether or not to submit to
treatment.  He based his opinion on
R.J.M.’s statements that “the world is going to be blown up by nuclear war” and
“the U.S.A. cabinet will not reconsider their bullshit” along with the fact
that she was discharged from this facility by the court approximately one month
ago.  The patient repeatedly used curse
words, including the “F” word, throughout the interview and thought the doctor
was the chaplain.  R.J.M. exhibited
extremely poor insight and judgment as well as manic-like behavior.  

            Dr.
Taylor testified at the hearing, explaining that R.J.M. is mentally ill,
suffering from Bipolar I Disorder, mixed, with psychosis, and likely to cause
harm to herself.  He also testified that
R.J.M. is suffering severe and abnormal mental, emotional, or physical
distress, experiencing substantial mental or physical deterioration of her
ability to function independently, and is unable to make a rational and
informed decision whether or not to submit to treatment.  Dr. Taylor based his opinion on R.J.M.’s
condition at the time of her admission. 
He explained that, when she was admitted, R.J.M. told him the world was
going to be blown up by nuclear war.  She
cursed frequently, primarily by using the “F” word throughout the
interview.  The doctor explained that
R.J.M. has extremely poor insight and judgment and since her stay she has
required a multitude of injections of emergency medications for such things as
loud, agitated, aggressive, and assaultive behavior.  Dr. Taylor said R.J.M. is threatening and
delusional, will not redirect, and directs racial slurs at other patients.  The doctor testified that R.J.M.’s
threatening behavior and language toward other people is a continuing pattern
of behavior.  She argues about the
medication and dosage and is at times very loud and threatening.  Dr. Taylor said the delusions about the world
coming to an end were a problem where she lived and interfere with her ability
to care for herself appropriately.  He
also explained that her manic behavior would affect her ability to take care of
herself or cause serious harm to her. 
She “gets to carrying on” verbally and physically and will not stop to
listen to reason.  Having no insight into
her illness, she makes terrible decisions. 
Dr. Taylor stated that Rusk State Hospital is the least restrictive
available option for R.J.M. at this time. 


            On
cross examination, Dr. Taylor agreed that R.J.M. does not want to be at the
hospital and is angry about being kept there against her will, which could be
the basis for irritability, loud behavior, and racial slurs.  The doctor stated that, while all who use
vulgar language and racial slurs are not mentally ill, that sort of language
can be a symptom of mental illness.  The
doctor agreed that there are those in the world who are seriously worried about
the future of the world and some in the field of religion who prophesy that we
are in the end times.  He did not recall
that R.J.M. had attempted suicide.  Dr.
Taylor testified that R.J.M. is able to feed herself and dress herself without
assistance or prompting.  Dr. Taylor
testified that R.J.M. would know enough of the dangers of a burning building to
get out of the building, but she does not know the basic fundamentals of
personal safety.  R.J.M. can purchase
food at a grocery store and obtain housing.

            Upon
questioning by the court, Dr. Taylor clarified that R.J.M. had assaulted
patients and/or staff and that she has delusions of grandeur.  She believes she knows more than anyone and
tells the doctor what medications she should take, what color the pills should
be, and the dose she should take.  As an
example of her poor decision making, the doctor stated that she becomes
aggressive and has assaulted other patients. 
He said this assaultive behavior is caused by her mental illness and is
not provoked in any way. 

            On
continued cross examination, Dr. Taylor clarified that there were eight
assaults and the most recent occurred the day before the hearing.  The doctor explained that the assaults were
physical and initiated by R.J.M.    

            R.J.M.
testified in her own behalf.  She said
she does not want to remain in Rusk State Hospital.  She explained that she wants to go home to
Lake of the Pines where she lives with her dog. 
She said she does not wish to harm herself or anything else.  She explained that she had a cut on her head
but she did not cut herself.  She and her
daughter had a “scrap.”  She said that
was a long time back and her head has been hit four times since then.  When she is living alone, she does her own
shopping and cooking if she wants to. 
She said she feeds herself and there are people at her church who will
not let her do without.  She did not
consent to coming to the hospital but she is not angry because they are helping
her in a lot of ways.  

            R.J.M.
explained that what the doctor referred to as aggressive behavior was probably
when she was telling the devil to get behind her.  She said she is a loud person and she is
getting out of a twenty-two year relationship. 
When asked about getting into fights at the hospital, R.J.M. said she did
not fight “him” and described an incident when a nurse and others came into her
room to give her two shots.  Counsel
asked if she threw a punch and she responded, “He grabbed me.”  Counsel asked if she was fighting for her
defense and she said she was just trying to stay in her bed.  When asked if she had been in other physical altercations
at the hospital, she said, “Not that I know of, not intentionally.  If I did, I’m sorry.”  She said she had not been in a fight outside
the hospital since about February and that was with her ex-husband.  

            R.J.M.
explained that she talks to God all the time in a prayerful manner, begging for
mercy.  She meant what she had said about
nuclear wars.  She said if we do not pull
together, there will not be a 2006.  She
explained that if she were in a burning building she would do her best to get
out, if she had a broken arm, she would see a medical doctor, and she would not
sit on a fire ant hill.  She explained
that she believes in knowing your body and not abusing drugs or yourself.  Dr. Taylor would not listen to her about
knowing her body.  She continued, “But he
gave me Seraquel at 300 milligrams, and I ran out of Lithium, and if I walked
outside naked, Dr. Taylor, I apologize. 
When I take 300 Seraquels, I am dead, so I take a quarter of one of
those when I get ready to rest.” 

            On
cross examination, R.J.M. said she is not sure if she ran naked.  The medication messes her up but she did not
think she did.  Her neighbors will tell
her when she gets home.

            The
court then asked Dr. Taylor if he had both a written record and verbal record
indicating the incidents of aggression. 
The doctor explained that each morning the nurse brings him a written
record from the past twenty four hours and he gets additional information from
verbal reports.

            The
trial court entered an order for temporary inpatient mental health services
after determining that the evidence supports the allegations that R.J.M. is
mentally ill and that she is likely to cause serious harm to herself.  The court also found that R.J.M. is suffering
severe and abnormal mental, emotional, or physical distress, experiencing
substantial mental or physical deterioration of her ability to function
independently, and unable to make a rational and informed decision as to
whether to submit to treatment.  The court
ordered R.J.M. committed to Rusk State Hospital for a period not to exceed
ninety days.

 

Sufficiency
of the Evidence

            In
her sole issue, R.J.M. asserts the evidence is neither legally nor factually
sufficient to support the order of commitment. 
She asserts that the evidence merely shows, if anything, that she is
mentally ill and may be in need of hospitalization.  She argues that the doctor’s testimony does
not support the imposition of a commitment under the clear and convincing
standard.   

Standard of Review

            In
a legal sufficiency review where the burden of proof is clear and convincing
evidence, the reviewing court must consider all of the evidence in the light
most favorable to the finding to determine whether a reasonable trier of fact
could have formed a firm belief or conviction that its finding was true.  In re J.F.C., 96 S.W.3d 256,
266 (Tex. 2002).  The reviewing court
must assume that the factfinder resolved disputed facts in favor of its finding
if a reasonable factfinder could do so.  Id.  A court should disregard all evidence that a
reasonable factfinder could have disbelieved or found to have been
incredible.  Id. 

            In
addressing a factual sufficiency of the evidence challenge, we must consider
all the evidence in the record, both that in support of and contrary to the
trial court’s findings.  In re C.H.,
89 S.W.3d 17, 27-29 (Tex. 2002).  This
court must give due consideration to evidence that the factfinder could
reasonably have found to be clear and convincing.  Id. at 25.  We must determine 

whether the evidence is such that a
factfinder could reasonably form a firm belief or conviction about the truth of
the State’s allegations.  Id.  We must consider whether disputed evidence is
such that a reasonable trier of fact could not have reconciled that disputed
evidence in favor of its finding.  In
re J.F.C., 96 S.W.3d at 266. 
Appellate courts retain deference for the constitutional roles of the
factfinder.  In re C.H., 89
S.W.3d at 26.  The trier of fact is the
exclusive judge of the credibility of the witnesses and the weight to be given
their testimony.  See id.
at 27; In re J.J.O., 131 S.W.3d 618, 632 (Tex. App.–Fort Worth
2004, no pet.).

Applicable Law

            The
trial judge may order a proposed patient to receive court ordered temporary
inpatient mental health services if the judge or jury finds, from clear and
convincing evidence, that the proposed patient is mentally ill and, as a result
of the mental illness he is likely to cause serious harm to himself, is likely
to cause serious harm to others, or is (i) suffering severe and abnormal
mental, emotional, or physical distress, (ii) experiencing substantial mental
or physical deterioration of his  ability
to function independently, which is exhibited by his inability, except for
reasons of indigence, to provide for his basic needs, including food, clothing,
health, or safety, and (iii) unable to make a rational and informed decision as
to whether or not to submit to treatment. 
Tex. Health & Safety Code Ann.
§ 574.034(a) (Vernon 2003).  To be clear
and convincing under the statute, the evidence must include expert testimony
and, unless waived, evidence of a recent overt act or a continuing pattern of
behavior that tends to confirm either the likelihood of serious harm to the
proposed patient or others or the proposed patient’s distress and the
deterioration of his ability to function. 
Tex. Health & Safety Code Ann.
§ 574.034(d) (Vernon 2003).

Analysis

            The
State provided expert testimony explaining that R.J.M. is mentally ill and
describing her behavior and statements. 
In his certificate of medical examination, Dr. Orocoesky explained that
R.J.M. was disheveled and fearful.  She
had been running naked because she felt the world was going to be blown up
soon.  Dr. Taylor’s certificate of
medical examination indicated that R.J.M. was delusional and exhibited poor
insight and judgment.  At the hearing,
Dr. Taylor testified that  R.J.M. was
likely to cause harm to herself, a conclusion he came to based on R.J.M.’s
condition at admission.  She has
exhibited loud, agitated, aggressive, and assaultive behavior while at the
hospital.  Having no insight into her
illness, she makes terrible decisions, which led to the eight assaults she
committed while in the hospital.  This is
expert testimony of a pattern of behavior that tends to confirm the likelihood
of R.J.M.’s causing serious harm to herself by inviting attack.  Considering all the evidence in the light
most favorable to the findings, we conclude a reasonable trier of fact could
have formed a firm belief or conviction that R.J.M. is likely to cause serious
harm to herself.  See In re J.F.C.,
96 S.W.3d at 266.  The evidence is
legally sufficient to support the trial court’s order.  See id.

            In
addressing R.J.M.’s factual sufficiency complaint, we consider the evidence,
giving due consideration to evidence the factfinder could reasonably have found
to be clear and convincing.  In re
C.H., 89 S.W.3d at 25.  R.J.M.
testified that she did not want to harm herself.  She explained away the aggressive behavior,
saying she was a loud person and was addressing the devil.  She denied intentionally participating in
altercations at the hospital.  The trial
court was entitled to disbelieve R.J.M.’s testimony and disregard evidence
contrary to the State’s position.  See
id. at 27.  Accordingly, in
light of the entire record, the evidence that the trial court could not have
credited in favor of its findings is not so significant that it could not
reasonably form a firm belief or conviction that R.J.M. is mentally ill and is
likely to cause serious harm to herself. 
See id.  Thus, the
evidence is factually sufficient to support the trial court’s findings.  Because we hold the evidence is both legally
and factually sufficient to support the trial court’s order, we overrule R.J.M.’s
sole issue.

 

Disposition

            We
affirm the trial court’s order of commitment for temporary
inpatient mental health services.

 

                                                                                                    DIANE DEVASTO   

                                                                                                                 Justice

 

 

Opinion
delivered February 28, 2006.

Panel
consisted of Worthen, C.J., Griffith, J., and DeVasto, J.

 

 

 

 

(PUBLISH)